IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JUAN ALICEA-ROMAN

    Plaintiff,

          v.

COMMISSIONER OF SOCIAL SECURITY

    Defendant.

**Civil No. 10-1707 (SEC)**

**OPINION and ORDER**

    Plaintiff Juan Alicea-Roman ("Alicea") brought this action under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Alicea seeks review of the Commissioner of Social Security's (the "Commissioner") denial of his application for disability benefits. Docket # 1. Alicea filed a memorandum of law supporting his request (Docket # 16), and the Commissioner filed an opposing memorandum (Docket # 20). For the reasons set forth below, the Commissioner's decision is **REMANDED.**

**Procedural Background**

    On February 4, 2004, Alicea filed an application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 301 et seq, where he claimed to have been disabled since May 6, 2002. Tr. 98. On his disability report, Alicea claimed that he suffered from an herniated disc, lower back pain, and depression. Id. at 114. The application for disability benefits was denied initially and again upon reconsideration. Id. at 26-27, 28-36, 38-40.   Alicea then sought a hearing before an administrative law judge ("ALJ") but waived his right to appear at the hearing in-person. Id. at 14. The ALJ held a video hearing on June 27, 2008, in which Alicea's counsel appeared. Id.  In his decision, the ALJ concluded that Roman had not been disabled through December 31, 2007, the date when he was last insured under the Act because step four

of the sequential analysis showed that Alicea could do his past relevant work. Id. at 23. Dissatisfied, Alicea appealed, arguing that the ALJ's decision was not sustained by the evidence of record. Id. at 6. The Appeals Council denied Alicea's request for review, making the ALJ's decision the final decision of the Commissioner and, therefore, subject to judicial review. Id. at 3-5.

This complaint followed. Docket # 1. Alicea's primary contention is that the ALJ failed to comply with Social Security Ruling ("SSR") 82-62, because he did not compare Alicea's Residual Functional Capacity ("RFC") with his past work requirements.

**Standard of Review**

Section 405(g) provides that findings of the Commissioner "as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "[S]ubstantial evidence" must be "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted), but "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion," then the district court must uphold the Commissioner's findings. Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). Accordingly, even if the record could justify a different conclusion, the Commissioner's findings must be affirmed if supported by substantial evidence. Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 144 (1st Cir. 1987).

Remand to the Commissioner is appropriate, with instructions to expand the record, where the Commissioner's conclusion "is not readily verifiable on the record as it stands." Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 19 (1st Cir. 1996);

In assessing whether there is substantial evidence to support the Commissioner's findings, the District Court has a duty "to make a searching investigation of the record." Gold v. Sec'y of Health, Educ., & Welfare, 463 F.2d 38, 43 (2d Cir. 1972) (internal quotation marks

**CIVIL NO. 10-1707 (SEC)**                                                                                                        Page 3

omitted) (quoting Miracle v. Celebrezze, 351 F.2d 361, 382-83 (6th Cir. 1965)). The Court may not consider exclusively the evidence that would support the Commissioner's conclusions, but instead has a duty to "canvass[] the whole record" and to look also at "the evidence opposed to" the Commissioner's view. See Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951) (expounding the "substantial evidence on the whole record" standard as applied to review of an NLRB decision); Diaz v. Sec'y of Health & Human Servs., 791 F. Supp. 905, 912 (D.P.R. 1992) (quoting Universal Camera to note that district courts must also look at evidence that detracts from the ALJ's conclusions). The Court must not, however, substitute its own judgment for that of the ALJ. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). Moreover, it is the claimant who has the burden of establishing that he is disabled. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 79 (1st Cir. 1982).

**Factual Background**

Alicea was thirty-five years old when his disability allegedly started on May 6, 2002 and forty-one years old on December 31, 2007, the date when he was last insured. Tr. 98. He had worked as a truck driver (plumber service man) for a private company, from 1998 to 2002, when he suffered a work-related injury to his back. Id. at 121 and 240. According to a medical evaluation, Alicea's injury occurred after he tried to pull a large hose out a of a sewer line. Id. Shortly after his injury, Alicea endured a course of physical therapy. Id. at 235-42. On June 6, 2002, Clifford A. Rode, M.S., a licenced physical therapist, found Alicea to have some reduced range of motion. Later, in 2003, Alicea underwent surgery on his back to repair a herniated disc. Id. at 257-60.

On March 29, 2004, neurologist Alfredo Perez, M.D. examined Alicea and found that his gait was adequate and his coordination was good. Id. at 281. Dr. Perez, however, diagnosed

**CIVIL NO. 10-1707 (SEC)**                                                                 Page 4

Alicea with chronic lower back pain and S/P LS Laminectomy. Id. During that same time frame, Dr. Perez referred Alicea to Angel R. Colon, M.D. for a roentgenological consultation. Id. at 282. As part of this comprehensive examination, Alicea's hands were examined; Alicea was able to grip, grasp, pinch, finger tap, oppose fingers, button a shirt, pick up a coin, and write. Nevertheless, Dr. Colon noted that Alicea had a lumbarization of S1. Id.

Two weeks later, psychiatrist Armando I. Caro, M.D. examined Alicea at the Commissioner's request. Id. at 288-89. According to Dr. Caro, Alicea reported being depressed after his back injury and because of his chronic back pain. Id. at 288. Alicea told Dr. Caro that, although he had never been under psychiatric treatment, his primary care physician had prescribed him an anti-depressant to help reduce his anxiety. Id.

In his evaluation, Dr. Caro indicated that Alicea's speech was fluent, coherent, and logical. Id. at 289. Although Dr. Caro found Alicea's affect irritable, he noted that his mood was neutral. Id. Finally, Dr. Caro noted that Alicea's concentration was impaired, but his memory was intact; his abstract thinking was preserved; and his insight and judgment were fair. Id. Ultimately, Dr. Caro diagnosed Alicea with a major depressive disorder; his GAF at the time was assessed at 55-60.[1] In light of the foregoing observations, Dr. Caro noted that "[h]is prognosis [was] poor based on his physical condition." Id.

In that same period of time, Osvaldo Rivera Marrero, M.D., a state agency physician, evaluated Alicea's records. Tr. at 295-301. Dr. Rivera concluded that Alicea could frequently balance and kneel and occasionally climb, stoop, crouch, and crawl. Id. at 296. Furthermore, he noted that Alicea could occasionally lift fifty pounds, frequently lift twenty-five pounds.

---

[1] The Global Assessment of Functioning, or GAF, is a scale that represents the clinician's judgment about a patient's psychological, social, and occupational functioning. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000) (hereinafter DSM-IV). A score of 55 to 60 corresponds to moderate symptoms. Id.

**CIVIL NO. 10-1707 (SEC)**                                                              Page 5

In June 2004, Lillian Gonzalez, Ph.D., a State agency psychologist, reviewed Alicea's records. Id. at 303-20. She concluded that, notwithstanding his depression, chronic back pain, and herniated lumbar discs, Alicea could understand, recall, and follow simple and detailed instructions; he was able to respond to minimal changes in a work-setting. Id. at 319.

In September 2004, Dr. Antonio Noriega noted Alicea needed a job that permitted shifting positions at will from sitting, standing or walking. Id. at 324. He also noted that Alicea could rarely lift and carry less than 10 pounds in a competitive work situation. Id. at 325. Furthermore, he observed that Alicea could never crouch or stoop; and that, while engaging in occasional standing or walking, he had to use a cane or other assistive device. Id.

In December 2004, neurologist Samuel Mendez, M.D. examined Roman. Id. at 340-42. Dr. Mendez readily observed that Alicea "[u]nderwent a back surgery with no benefit." Id. at 340. Id. at 341-42. He observed, however, that Alicea's strength was near-perfect, graded 5/5, except for the psoas (4/5), which was limited by his chronic back pain. Id. at 341. Nonetheless, Dr. Mendez's diagnosed Alicea with chronic lumbalgia, S/P lumbar laminectomy, and lumbo sacral syndrome.

In March 2005, psychiatrist J.A. Mojica Sandoz, M.D. examined Roman at the Commissioner's request. Id. at 350. Dr. Mojica noted that Alicea was relatively anxious, but accessible, cooperative, and frank. Id. at 351. Further, Dr. Mojica observed that Alicea's recent and remote memory was intact, and his capacity to pay attention and concentrate was well-preserved, but "[h]e showed a sad facial expression." Id. However, Dr. Mojica noted that Alicea "[w]as limping to his right side and helped himself with a cane." Id.

**CIVIL NO. 10-1707 (SEC)** Page 6

**Applicable law and analysis**

As stated above, Alicea contends that the ALJ failed to comply with SSR 82-62 because he did not compare Alicea's RFC with his past work's requirements. Docket # 16, pgs. 11-19. He argues that the requirements of his past work as a truck driver exceeded his RFC. Id. at 20. In support of this contention, Alicea points to the ALJ's RFC finding for "medium work not requiring frequent pushing and pulling, including the operation of hand controls with the right arm, nor frequent handling, that is gross manipulation and fine manipulation (fingering) with the right hand and performance of complex tasks." Id. (quoting Tr. 22). Based upon the foregoing finding, Alicea alleges that because he worked as a truck driver who had to lift up to eighty pounds, an RFC that restricted him to lifting up to fifty pounds and the use of his right hand would preclude his past work. Id. at 20-21. Alicea also contends that the ALJ should have made a comparison of the requirements of his past work as a truck driver with his RFC. He posits that such exercise would have yielded a different conclusion; that his past work exceeded his RFC.

In opposition, the Commissioner alleges that Alicea cites an incorrect RFC finding because it mentions limitations related to a hand problem, a condition that Alicea never complained of. Docket # 20 at 12. Furthermore, the Commissioner argues that the ALJ's error—which most likely stems from a "copy and paste" typing function—was harmless because he also included his "correct" RFC finding in his decision, providing support for it. Id. at 13. Alternatively, the Commissioner alleges that, although unchallenged by Alicea, the ALJ's correct RFC finding is supported by substantial evidence. Id. With respect to Alicea's argument that the ALJ failed to consider his past work requirements, the Commissioners argues that the ALJ's consideration of Alicea's past relevant work suffices. Id. at 15.

**CIVIL NO. 10-1707 (SEC)** Page 7

*The Commissioner's correct finding*

The portion of the ALJ's opinion relating to his correct RFC finding is reproduced here in its entirety:

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the physical [RFC] to perform medium work . . ., that is to lift and carry fifty (50) pounds occasionally and twenty five (25) pounds frequently. He can sit and stand/walk for six hours in an eight hour work day. He is not limited in pushing and/or pulling, including the operation of hand and or foot controls, with his upper and lower extremities. He can frequently balance and kneel, but only occasionally climb, stoop, crouch, and crawl. He has no manipulative, visual, communicative, or environmental limitation. From the mental standpoint, he is able to learn, understand, remember, and carry a simple and detailed instructions and tasks; he is able to maintain attention concentration for at least two hour intervals; he is able to adapt and deal with changes in work settings and environments; use judgment in making work decisions; and, he is able to relate and interact with others, such as co-workers and supervisors.

Tr. 20-21.

The foregoing finding evinces that the ALJ's reference regarding Alicea's right-hand limitation was a mistake. First, the record shows that Alicea never made an allegation concerning a hand problem. See Tr. 114. Second, the medical records show no evidence of treatment for a hand impairment. Third, all the evaluations pertaining to Alicea's hands were unremarkable. Id. at 283, 297 and 345. Consequently, the ALJ's finding restricting Alicea to operating hand controls with the right arm or doing gross and fine manipulation with the right hand seems wholly counterintuitive in light of the foregoing evidence.

The Court thus agrees with the Commissioner that "[m]ost likely, the 'incorrect' RFC finding resulted from an unfortunate use of the 'cut and paste' typing function." Docket # 20 at 13. A review of Alicea's medical records clearly shows that the ALJ's clerical mistake is overshadowed by the above-cited correct finding, which is in turn supported by substantial evidence. Hence, remand on this front is inappropriate. See Ward v. Commissioner of Social

**CIVIL NO. 10-1707 (SEC)**                                                                                         Page 8

Security, 211 F.3d 652, 656 (1st Cir. 2000) (holding that "[r]emand is not essential if it will amount to no more than an empty exercise.").

*Whether the ALJ failed to comply with SSR 82-62*

As previously stated, Alicea alleges that the ALJ erred by concluding that he could perform past relevant work as actually and generally performed, in accordance with SR 82-62 (the "ruling"). He also contends that the finding of whether claimant can perform past relevant work was not done pursuant to the ruling, which requires that a disability decision give a "clear picture of the case," follow an "orderly pattern," and show how the "specific evidence leads to a conclusion." SR 82-62, 1975-1982 Soc.Sec.Rep.Serv. 809, 1982 WL 31386, at *4 (S.S.A.). It specifically requires "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the individual's RFC would permit a return to his or her past job." Id.; Ramos–Albelo v. Secretary of Health & Human Services, No. 92-1650, 1992 WL 340884, at *4 (1st Cir. Nov. 23, 1992) (observing that ALJ has a responsibility to make "every effort" to secure evidence and develop the record regarding a claimant's ability to do past work).

The Commissioner argues that "[i]t can be gleaned that the ALJ relied upon the descriptions of the truck driver jobs contained in the DOT to conclude that Plaintiff could do his past work as a truck driver." Docket # 20 at 19. The Commissioner, however, concedes that [t]he ALJ's comparison between [Alicea's] RFC and the requirements of the truck driver job (as it is generally performed) could have been more thorough . . . ." Nevertheless, he argues that "[w]hen the comparison is made, it is clear that the ALJ's decision was correct." Id.

At step four, a claimant will be found not disabled when he retains the RFC to perform "the actual functional demands and job duties of a particular past relevant job." Santiago v. Secretary of Health and Human Services, 944 F.2d 1, 5 (1st Cir. 1991) (internal quotation marks

**CIVIL NO. 10-1707 (SEC)**  Page 9

and citations omitted). "The Secretary must ascertain the demands of the usual former work and then compare those demands with present mental and physical abilities." <u>Id.</u> at 6. (citation omitted). To be sure, the claimant has the initial burden to describe his past work and how his former work duties were compromised by his physical or mental condition. <u>Id.</u> As the <u>Santiago</u> Court sagaciously observed:

> The kind of foundation that the claimant initially must lay requires no more than putting into issue functional loss that precludes performance of pertinent prior work activities. Once this threshold is crossed, the ALJ has the obligation to measure the requirements of former work against the claimant's capabilities; and, to make that measurement, an expert's RFC evaluation is ordinarily essential unless the extent of functional loss, and its effect on job performance, would be apparent even to a lay person.

<u>Id.</u> at 6-7.

Here, Alicea clearly met his initial burden. In his past work questionnaire, he described the job he did the longest (iron worker) as lifting and dropping incubators and scientific equipment weighting over a hundred pounds. Tr. 116. He also worked as a pump mechanic where he had to lift weight exceeding fifty pounds. <u>Id.</u> at 133. Furthermore, in his latest job as a truck driver and shop mechanic, Alicea had to lift and carry truck hoses. <u>Id.</u> 134. (As a matter of fact, this is exactly how he got injured in the first place, <u>see id.</u> at 121 and 240.) In sum, after his accident and unsuccessful surgery, Alicea's ability to return to his rather physical line of work is at the very least questionable.

Unfortunately, the ALJ's decision is limited to a perfunctory observation that Alicea's [p]ast relevant work as a truck driver did not require the performance of work-related activities precluded by the claimant's [RFC]." Tr. 23. He based this contention on the conclusion supposedly reached by the vocational experts ("VE"), namely, "[t]hat the claimant can perform his past relevant work, as the same did not exceed his [RFC] through December 31, 2007." <u>Id.</u> Finally, the ALJ concluded his decision by saying—albeit not showing—that he compared

**CIVIL NO. 10-1707 (SEC)**                                                                 Page 10

Alicea's RFC with the physical and mental demands of his work, and found that Alicea "[w]as able to perform it as it was actually and generally performed." Id.

Upon examining the record, the Court concurs with Alicea that the ALJ's findings fail to comply with the ruling in question. Although the ALJ said that he based his decision on the findings made by the VE, he failed to provide citations to the record. [2] Still, this Court ferreted out the record but found no discussion on this front.[3] Here, as in Mercado v. Commissioner of Social Security, 767 F. Supp. 2d 278, 286 (D.P.R. 2010), the ALJ's decision lacks the description of the physical and mental demands of Alicea's past job. "While these might readily be supplied by the testimony of plaintiff or a vocational expert during an administrative hearing, *that did not happen due to waiver and the operation of step four*." Id. (emphasis added). Furthermore, "[r]easons have to be given by the administrative law judge for the basis of a determination and that clear reasoning is absent in the findings." Id.; see also Winfrey, 92 F.3d at 1025 (holding that "[i]t is feasible at this step for the ALJ to make specific findings about the mental and physical demands of the jobs at issue and to evaluate the claimant's ability to meet those demands").

Simply put, the ALJ failed to take into account the particularities of Alicea's past work, especially his last job where he worked as a truck driver and plumber for a sewage company. For example, according to Alicea's job description, he had to lift and carry the truck hoses and "[h]ad to put them on the road to a distance of 100 feet." Tr. 134. This description, among other

---

[2] Some courts have criticized the practice of relying entirely on the VE's findings with respect to the physical and mental demands of the jobs at issue and the claimant's ability to meet those demands. See e.g., Winfrey v. Chater, 92 F.3d 1017, 1025 (10th Cir. 1996) ("This practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged.").

[3] While the vocations experts were requested to appear at the hearing, it is unclear if they actually did, or if they rendered a report. Tr. 71-87.

**CIVIL NO. 10-1707 (SEC)**                                                                 Page 11

examples, "[c]haracterize[s] [Alicea's] responsibilities as requiring a greater level of physical strength than the ALJ determined that [Alicea] currently possesses, which would suggest that [Alicea] is—contrary to the ALJ's findings—unable to perform h[is] past relevant work." Ruiz-Gonzalez v. Astrue, No. 09-1841, 2011 WL 381734, at *10 (D.P.R. Feb. 5, 2011).

With due deference to the administrative judge, he had to elaborate—rather than recite—the requisites imposed by the ruling, i.e., a discussion regarding the physical and mental demands of Alicea's past work and whether his RFC would permit a return to his job. Where as here, Alicea's past work involved more than merely driving a truck, the ALJ had to articulate the reasons that led him to conclude that Alicea's RFC permitted his return to this type of job. E.g., Porter v. Astrue, No. 10–CV–86–FHM, 2011 WL 1238430, at *2 (N.D.Okla. Mar. 30, 2011) (holding that "[i]f the ALJ is convinced that Plaintiff failed to meet [his] burden, the regulations and Social Security Rulings are quite clear that it is the ALJ's responsibility to explain the reasons for his findings"). In short, because the ALJ's decision fails to provide "an adequate discussion of the issues," it falls short of complying with the ruling in question. Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003).

**Conclusion**

For the reasons articulated above, this Court orders the Commissioner to conduct further proceedings in order to comply with the requirements of the substantial evidence rule. These proceedings should include, but need not necessarily be limited to, comparing Alicea's RFC with the demands of his past relevant work. Hence, this case is **REMANDED**.

**IT IS SO ORDERED**

In San Juan, Puerto Rico, this 3rd day of November, 2011.

*S/ Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge